## IN THE MATTER OF F. M. WAKEFIELD and W. S. WISE, Attorneys at Law.

Submitted August 18, 1897.          Decided August 26, 1897.

### Judd, C.J., Frear and Whiting, JJ.

It is censurable conduct for attorneys while acting for a client in one matter to bring an action closely connected with it against him having as its ulterior object actual and prospective gains to themselves.

#### OPINION OF THE COURT BY JUDD, C.J.

We do not hold the Attorney-General to the strictest rules of pleading in an information against an attorney of this Court for gross misconduct.   The essential thing is to present such a narra-

tive of the acts charged as gross misconduct as will apprise the Court and the respondents of the exact nature of the misconduct. The conclusions of law in the information which are objected to by counsel for the respondents are, in our opinion, merely more specific allegations why the acts recited show misconduct and an abuse of legal process. They do not prejudice the respondents, for the Court will form its own conclusions from the testimony. Possibly if they were not in the information the Attorney-General might be asked to make his charges—not allegations of fact —more specific. For these reasons we denied the motion to expunge. A demurrer was interposed and we overruled it, being then of opinion that an investigation of the facts was essential.

We find the facts of this case to be succinctly as follows:

In May last the American ship "Indiana" was lying at anchor in the bay of Hilo, Island of Hawaii, the lading of her cargo of sugar for New York being nearly completed. A seaman on board, shipped in Yokohama for a voyage to Hawaii and New York, named Summers C. Mace had deserted from her, had been arrested and returned to the vessel. It was discovered that the vessel was leaking in consequence of some holes that had been bored in her. The United States Consular Agent of the said port of Hilo, Mr. Chas. Furneaux, made an examination of the crew and as his suspicions fell upon Mace as the perpetrator of this offense he requested the sheriff of the island, Mr. L. A. Andrews, to arrest him, with the intention that he be dealt with by the local authorities. It must be mentioned here that the alleged offense being one committed on a foreign ship in our waters was considered to be within the jurisdiction of our local authorities, concurrently with that of the home port. The man was arrested and brought before the District Magistrate of South Hilo and charged with malicious injury in attempting to disable the vessel. At the suggestion of the sheriff and on the request of the District Magistrate, Mr. F. M. Wakefield, a duly licensed attorney of this Court, undertook to defend the man. Mr. Wakefield brought Mr. W. S. Wise, also a duly licensed attorney, into the case as his assistant. This was on the 3d of May

last. By mutual consent the case was continued to the 5th of May owing to the sheriff's press of business in preparing his official returns, and was finally set for the 8th. On the 4th the attorneys for Mace, respondents, took out a subpoena for the captain, officers and all the crew of the "Indiana" and captains of three other vessels then in the port as witnesses in the case, and requested the sheriff to serve them. He told them that he was intending to ask for a nolle prosequi of the case and that it would be useless to serve the subpoena. The subpoena was originally made returnable on the 5th and was changed to the 8th. On that day the sheriff entered a nolle prosequi. Immediately thereafter the respondents filed a declaration in behalf of Mace against the captain of the "Indiana," the sheriff and the Consular Agent, claiming damages, $10,000, for malicious prosecution. Meanwhile, the Consular Agent, the case against Mace having ended, had given the sheriff a written request to cause Mace to be placed on board the ship. There was some delay in executing this request and while Mace was still in the custody of the sheriff, on the same day, the respondents took out a process of arrest against Mace as an absconding debtor, under the following circumstances: Mr. A. B. Loebenstein the evening before, May 7th, casually met the respondents at the office of Mr. Wakefield where he and Mr. Wise were preparing some legal papers. Upon being told the circumstances of the arrest of Mace and his case was to be dropped the next day Loebenstein was asked if he would "help them out." This was explained to mean that he was asked to furnish the costs and fees for the suit of Mace against the captain, the sheriff and the Consular Agent for malicious prosecution. He answered that he would think it over and the next morning when Mace, who had been sent to him to procure a loan for the purpose above indicated asked for it, he said he would do so and procured a note on demand from Mace for $537. Loebenstein then gave, as he says, a check for $500 on his Honolulu agent to Mr. Wakefield and a check for $37 for costs in the malicious prosecution suit to the order of the clerk of the court. Mr. Loebenstein says that he looked to the damages expected to

be recovered in the suit for his repayment as he wished to "even up" matters against Sheriff Andrews. Loebenstein says that learning that Mace was to be taken back to the ship he sought to stop his passport and finding that the passport law did not apply to seamen attached to foreign ships he requested the respondents to consider if Mace could not be detained here by some other means. After consultation together with Mr. D. H. Hitchcock, partner of respondent Wise, the respondents concluded to have Mace arrested as an "absconding debtor," and took out a process of arrest under Sections 953-5 of the Compiled Laws, claiming that Mace owed Loebenstein $299 on a promissory note of that day's date and that he was about to quit the Republic. To give the District Magistrate jurisdiction in the case, the limit being $300, Loebenstein endorsed on the back of the note "Credit by payment on the within note $238" and Loebenstein signed the same. Loebenstein says that the checks he gave have been paid. The sheriff served the warrant of arrest and detained Mace in jail at Loebenstein's expense until some days after the "Indiana" had sailed when the respondents discontinued the case and Mace was released.

The sheriff testified, under objection from respondents' counsel, that he "nol. pros'd" the case against Mace because it would be detrimental to the interests of the owners of the ship "Indiana" to detain her and her officers and crew as witnesses until the case could be heard in the first instance and on appeal, the Circuit Court not sitting again until July.

We comment on these facts as follows:

(1) It was perfectly proper under the circumstances for Sheriff Andrews to nol. pros. the case. His action representing, as he did, the Attorney-General, was equivalent to declining to take jurisdiction of the case. If Mace had continued on the voyage to New York he could have been tried at the home port in the appropriate court of the United States. The sheriff's only error was in not calling Mace up earlier, i. e., as soon as he had determined to enter a nol. pros. But as his counsel, the respondents, had agreed to the continuance to the 8th May and had

altered the return day of the subpœna to that date if Mace was harmed thereby counsel did not prevent it. The respondents were told that the case against Mace was to be ended so far as our courts were concerned. Was it not then precipitous action on the part of the respondents to charge the sheriff and his co-defendants with a malicious prosecution of Mace? They admit that it was hasty and ill-advised in a letter dated June 27, to the Consular Agent and they thereupon discontinued the suit.

(2) The acts of the Consular Agent in requesting the local authorities to take cognizance of the offense charged against Mace and to request the seamen's return to the ship were within his discretion.

(3) The respondents were the attorneys of Mace and had not been released by him when they acted for Lobenstein in prosecuting Mace as an absconding debtor. This was unprofessional conduct on their part and censurable.

(4) The process against Mace as an "absconding debtor," he being legally attached to the ship "Indiana," was in violation of Section 141 of the Civil Code which reads, "No seaman legally attached to any vessel while lying in any of the ports of this Republic (Kingdom) shall be liable for any debts he may contract while so attached."

This wholesome law has been in force in these islands for half a century and without its aid ships could readily be stripped of their crews and commerce destroyed. It is surprising that this law was not known to the authorities of Hilo, for the sheriff and the District Magistrate and several attorneys there were not familiar with it. One of the respondents, Mr. Wise, having been only a few months in the country says he was not familiar with it. Mr. Wakefield says he was aware of it and yet put the process of arrest in force in the teeth of it, saying that he might attack it as being unconstitutional.

(5) We are asked what harm has been done? To this the answer is made that the ship "Indiana" was unlawfully deprived of the services of one of her seamen. And it does not weigh

much with us that the captain of the ship has not complained of it and that he is not here to bring his action for damages.

(6)   We are not convinced of Mr. Wakefield's sincerity in answering that he did not know that Mace was "legally" attached to the ship. Mr. Wakefield knew that Mace, having been arrested and sent back to the ship as a deserter, was acting as a seaman and the presumption is that he, being *de facto* in that capacity, was so *de jure*. The subpœna taken out by respondents giving the names of the captain, officers and crew shows that respondents had means of knowledge of who were legally attached to the ship.            .

(7)   The transactions above recited took place on one and the same day. If they were merely hasty, inconsiderate acts, fired by a desire and a bona fide expectation of getting large damages for themselves and their clients from the suit against the sheriff and his co-defendants and in ignorance of our statutes we would excuse it, if this representation was made to us, though we could not commend it.   It is quite clear to us that the arrest and detention in prison of Mace, a penniless sailor boy, was without any reasonable expectation of getting any fees out of him.   When Mr. Loebenstein advanced the $500 for fees (although his legal claim against him is only for $299) the attorneys, respondents, were possessed of a reasonable retainer, but the motive existed to secure the detention of Mace as necessary to his case against the sheriff and pay themselves from the damages.   The respondents and Loebenstein knew or ought to have known when they took the note from Mace that it was worthless because he had no property, and because Mace was bound to be returned to the ship and would soon be out of the jurisdiction of the court when his case, the criminal charge, was to be dropped, and in spite of this they put in motion a process to detain him here.   The inference is that they took this step not to secure Loebenstein. Their knowledge that Mace would soon be out of their reach when they put the absconding debtor's process in force was no more certain than when they got Mace to sign the note three hours before.   So far as Mace was concerned they pleased him by

keeping him from the fulfillment of a voyage that haα become obnoxious to him, but this was not the prime object of the suit although it brought about that result.

It seems to us that it was to keep him in this country for his case of damages which was, as was confessed by Loebenstein, to "even up with the sheriff." Mr. Loebenstein had no cause for anxiety about his money, for it was then in the power of the respondents to return his checks and they should have done so if they were then acting solely in the interests of their client Loebenstein, having abandoned Mace. Loebenstein confesses to no anxiety for his money now, for he says that others having the same feelings as he entertains towards the Police Department, "will see him through."

We regret very much that such a state of affairs exists in Hilo that makes such proceedings possible. Counsel owe duties to the Court besides those to their clients. The conclusions we have come to, in short, is that Mace was induced to sign the note and was arrested, either in his own interest and by previous arrangement or collusion in order that he might be kept from going in the ship, or else he was arrested against his interest through the advice and agency of the respondents while acting as counsel for him (Mace) in his malicious prosecution suit, and chiefly in order that they might retain their fee already received or get other contingent fees through the prosecution of the suit for malicious prosecution. In either case their conduct was unprofessional and censurable.

We find the conduct of the respondents, while not calling for disbarment or suspension, deserves the censure of the Court.

Respondents to pay costs.

*Attorney-General W. O. Smith*, for the Information.

*A. S. Hartwell* and *P. Neumann*, for respondents.